UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| STEPHANIE J.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:20cv437 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 423(d). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2015.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured of September 30, 2015 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: headaches/migraines, diabetes mellitus with report of neuropathy, colitis bouts of gastroenteritis [sic], chronic obstructive pulmonary disease (COPD)/asthma (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) specifically: the claimant is limited to lifting, carrying, pushing, and pulling ten pounds frequently and occasionally throughout the workday. The claimant can sit at least six hours in an eight-hour workday and stand and/or walk two hours in an eight-hour workday. The claimant should not climb ropes, ladders or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs. The claimant can engage in the balance required of such activities. The claimant should avoid work within close proximity to very loud noises (level 5) such as a fire alarm or very bright flashing lights such as a strobe more than occasionally. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes, and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, greenhouse, refrigerator or sewage plant. The claimant can perform simple, routine tasks and instructions throughout the workday. In light of testimony regarding stress impacting physical complaints, the tasks contemplated are SVP 1 and 2 type tasks that can be learned within a short period through short demonstration, or when beyond short demonstration, within up to 30 days. The claimant is limited to work within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting. The claimant can tolerate predictable changes in the work environment. Work should not involve a significant amount of reading such as work manuals.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 30, 1970 and was 44 years old, which is

    defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date, through September 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 16-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on September 4, 2021. On November 15, 2021, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on December 13, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

4

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff alleged disability beginning September 30, 2015, which is also her date last insured. Plaintiff has the burden to establish the severity of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant retains burden of proof through step four); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) ("The burden, however, is on the claimant to prove that the impairment is severe."). A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Conversely, an impairment or combination of impairments is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Mere diagnosis of a medically determinable impairment does not establish that the impairment affects the individual's ability to perform basic work activities. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

In the present case, the ALJ found that several impairments, including sleep apnea and obesity, were not severe because "they did not exist for a continuous period of at least 12 months,

5

were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations" (Tr. 16, citing 20 C.F.R. 404.1509 and Social Security Ruling 85-28). Plaintiff claims that this finding was in error with respect to sleep apnea and obesity, alleging that these conditions lasted more than 12 months and caused more than a minimal effect on her ability to work.

With respect to sleep apnea, the ALJ noted that this diagnosis appeared in the record in March 2014. (Tr. 17). Specifically, a primary care record from March 2014 includes complaints of poor sleep and notes that Plaintiff should be using a continuous positive airway pressure (CPAP) machine, but had not been using one for many years. (Tr. 748). Sleep apnea was listed as a diagnosis. (Tr. 750). However, as the ALJ noted, there was no subsequent evidence to established this as a severe, ongoing impairment that imposed limitations of functions for a 12-month period. (Tr. 17). The subsequent treatment records do not appear to show follow-up with respect to sleep apnea until a sleep study in November 2017, over two years after Plaintiff's date last insured. (Tr. 1009–10). While Plaintiff speculates that sleep apnea may have contributed to fatigue, she fails to cite to any medical evidence of record to support this speculation, or any evidence establishing that sleep apnea caused significant limitations in her work-related functioning during the relevant period. Plaintiff contends that her sleep apnea was diagnosed as early as 2009, and the record indicates that she has documented sleep apnea but could not tolerate a CPAP. (Tr. 297, 302-03, 899-99, 1021-23)). However, these visits were for other conditions, such as wart removal or ER visits after a fall, and merely mentioned sleep apnea in Plaintiff's history and in her plan, where she was advised to lose weight. Plaintiff has not pointed to any evidence that her sleep apnea caused any limitations.

With respect to obesity, the ALJ likewise acknowledged that Plaintiff's obesity is documented in the record (Tr. 17, 750, 759), but there is no medical evidence of specific limitations or complications. Again, Plaintiff speculates that obesity could be relevant to her impairments such as COPD, or generally cause fatigue, but cites no evidence of record to support her speculation.

Plaintiff also has not connected her alleged limitations to sleep apnea or her weight. For example, at the hearing, when asked how long she could stand, Plaintiff testified that she could only do so for five to 10 minutes, citing her lower back pain and pain in her feet. (Tr. 58–59). She further alleged that these issues existed since 2009. (Tr. 59). However, the record does not document supporting impairments during the relevant period. The first mention of back pain appears to be in May 2013, when Plaintiff reported "back discomfort" that began only the day prior. (Tr. 898, 924). Plaintiff was given some medication. (Tr. 899, 925). There is no report of chronic back or foot pain until February and March 2018, when Plaintiff underwent some physical therapy. (Tr. 1035–38). The first evidence of degenerative disc disease is from June 2018. (Tr. 819). Thus, even accepting Plaintiff's testimony at the hearing in December 2019 at face value, she did not associate these limitations to sleep apnea or obesity, and the evidence during the relevant period prior to September 30, 2015, does not establish the impairments Plaintiff gave as the reason for her limitations. Accordingly, as substantial evidence supports the ALJ's finding that sleep apnea and obesity were not severe impairments during the relevant period prior to September 30, 2015, remand is not required on these issues.

Plaintiff next argues that the ALJ erred in evaluating her symptoms by not properly identifying the medically determinable impairments that could reasonably give rise to the alleged

7

limitations, and by not properly applying the regulatory factors when evaluating Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms.

The relevant medical evidence is as follows. In May 2009 Plaintiff sought emergency room treatment for abdominal pain and diarrhea, and she was noted to have a "history of nonspecific colitis, Crohn's per her". (Tr. 853). She was given medication with relief of her symptoms and discharged to follow up with her primary care provider. (Tr. 854). The listed diagnosis was right quadrant abdominal pain. (Tr. 854). In September 2009, Plaintiff sought emergency room treatment for abdominal pain and was noted to have a history of Crohn's disease. (Tr. 847). She was treated with medication and the assessment was abdominal pain and Crohn's disease. (Tr. 848). In November 2009, Plaintiff sought emergency room treatment for abdominal pain, which was described as a flair up of Crohn's disease. (Tr. 833). She was treated with medication and it appears she may have been admitted because of vomiting. (Tr. 835). The note also indicates that Plaintiff received antibiotics to cover the possibility of enteritis. (Tr. 835).

Plaintiff then had a number of emergency room visits related to abdominal pain in 2010–2013, all similarly treated with medication that relieved the symptoms and with a diagnostic assessment of abdominal pain or colitis, and sometime gastroenteritis and, on one occasion, ileitis: specifically, October 2010 (right upper quadrant abdominal pain) (Tr. 882–85); June 2011 (colitis) (Tr. 868–74); August 2011 (crampy abdominal pain, possible recurrent early colitis) (Tr. 866–67); August 2012 (diffuse abdominal pain) (Tr. 914–15, 938–41); February 2013 (vomiting, diarrhea, and abdominal pain; possible gastroenteritis) (Tr. 900–901, 926–28); September 2013 (abdominal pain, nausea, diarrhea; likely viral gastroenteritis) (Tr. 895–97); December 2013 (nausea, vomiting, diarrhea, abdominal pain, and report of colitis) (Tr. 1031–33); and a few days

later in December 2013 (ileitis) (Tr. 1027–29). In addition, Plaintiff always reported the onset of abdominal pain relatively recently. *See* Tr. 866, 868, 882, 900 (onset earlier that morning); Tr. 914 (onset 40 minutes prior); Tr. 895 (four days prior); Tr. 1031 (one day prior); Tr. 1027 (increased pain over the past day). Some of these records mention that Plaintiff reported that she had colitis or Crohn's disease, but also note the absence of a definitive diagnosis. *See* (in chronological order) Tr. 882 ("She said this feels like a flare of Crohn's possibly. It sounds like that diagnosis has been somewhat in question versus other colitis."); Tr. 868 ("She has previously been diagnosed with Crohn's disease per her report but a brief review of present medical records fail[s] to show a definitive diagnosis of Crohn's disease."); Tr. 866 ("Old chart does indicate that there is no charted definitive diagnosis of Crohn's."); Tr. 915 ("Discussed the etiology remains unclear."); Tr. 1031 ("She mentions colitis but it is unclear to me from review of the old charts and my previous encounters with her here in the emergency department whether that had been formally diagnosed by a physician or not.").

In February 2014, Plaintiff was hospitalized overnight after presenting to the emergency room reporting the sudden onset of abdominal pain that morning. (Tr. 331–32). A CT scan showed inflammatory changes in the ileum (a section of the small intestine) that were described as consistent with inflammatory bowel disease. (Tr. 324–25, 405, 966–67). Her diagnosis was entered as "acute colitis" and "inflammatory bowel disease". (Tr. 321, 326). She was treated with antibiotics (Levaquin and Flagyl), her abdominal pain resolved, and she was scheduled for outpatient specialist follow up for an esophagogastroduodenoscopy (EGD) and colonoscopy. (Tr. 334–37). Plaintiff returned to the hospital about five days later reporting increased abdominal pain. (Tr. 587–92). A CT and other imaging indicated Plaintiff had acute cholecystitis and cystic

9

duct obstruction. (Tr. 625–29) and Plaintiff underwent surgery to remove her gallbladder (cholecystectomy). (Tr. 592–93, 596).

In March 2014, Plaintiff underwent the EGD and colonoscopy. (Tr. 659, 665–67). The colonoscopy found a polyp, but the ileum and colon appeared normal. (Tr. 667). A biopsy showed no significant pathologic features and was negative for colitis. (Tr. 664, 751).

In October 2014, Plaintiff sought emergency room treatment for abdominal pain, which she reported was the first onset of such pain since March 2014. (Tr. 717). She denied any changes in bowel or bladder. (Tr. 717, 719). A work-up showed no acute findings, she was given medication with relief of her symptoms, and discharged. (Tr. 720–21, 731).

The next record in evidence related to abdominal pain is an emergency room visit in February 2018, well after Plaintiff's date last insured, for pain that had begun about seven hours prior. (Tr. 1012–14). Plaintiff reported a 20-plus-year history of intermittent abdominal pain and the note reports that "[n]othing definitive has apparently ever been found" and further notes that Plaintiff "did seem to improve briefly after a cholecystectomy in 2014". (Tr. 1012). A CT scan showed some colitis, but otherwise no specific findings. (Tr. 1013). Plaintiff was given antibiotics (Flagyl) and was to follow up with her primary care physician. (Tr. 1013).

In his decision, the ALJ found that one of Plaintiff's impairments was "colitis bouts of gastroenteritis" [sic] (Tr. 16). Plaintiff contends that this definition of her impairment was illogical, constitutes substitution of the ALJ's judgment for that of medical professionals, and that the ALJ needed to define what she meant and explain why she chose this label for the impairment. This allegation of error ignores that, most likely, the ALJ intended the finding to be "colitis with bouts of gastroenteritis" and that there is a typographical error in the decision. (Tr.

10

16). This reading most closely matches the diagnostic assessments in the treatment records as discussed above.

Plaintiff further asserts that the ALJ failed to notice that Plaintiff had Crohn's disease listed as a diagnosis, citing the emergency room reports in 2009 that either mentioned Plaintiff's own reports of having Crohn's disease or discuss the reported abdominal pain as a flare up of Crohn's disease, as well as a primary care note that references Crohn's disease. However, the ALJ considered these 2009 records, but also the subsequent records through 2014 make clear that the Crohn's diagnosis was not formally established, including that it was not confirmed by the EGD and colonoscopy. (Tr. 24–25).

Plaintiff also cites imaging from February and March 2014, including a CT that noted the findings were compatible with inflammatory bowel disease, as well as a laboratory test in April 2014 that found a pattern consistent with inflammatory bowel disease and Crohn's disease. (Tr. 322, 324–25, 334, 405, 584, 967, 997), but it is not clear how these particular records would have or should have changed the ALJ's analysis. Even assuming, arguendo, that Plaintiff may have had a diagnosis of Crohn's or inflammatory bowel disease at some point, or that some tests supported that diagnosis, the treatment records in evidence do not establish ongoing and unremitting abdominal pain and diarrhea as Plaintiff alleged. This Court agrees with the Commissioner that substantial evidence supports the ALJ's finding that the evidence shows intermittent complaints of abdominal pain and diarrhea, but not ongoing and unremitting symptoms that Plaintiff alleged or that would compel additional RFC limitations, such as a need for bathroom breaks. (Tr. 24–25).

The ALJ accepted that Plaintiff had a severe gastrointestinal impairment (Tr. 16), but

found that her overall statements regarding the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the medical and other evidence of record. (Tr. 20). Plaintiff argues that the ALJ committed legal error by including boilerplate language in the decision. The Seventh Circuit has repeatedly rejected arguments that use of such language indicates that the ALJ did not use the appropriate standard or that the decision must otherwise be remanded. *Gedatus*, 994 F.3d at 900 (rejecting an argument that the language means the ALJ did not use the appropriate preponderance-of-the-evidence standard and stating: "[W]e do not read the ALJ's language that way. It is clear to us, given the context, that the ALJ merely used a polite way to say the weight of the evidence did not support all her claims.").

Here, the ALJ considered Plaintiff's testimony in detail, including her allegations that she needed frequent bathroom breaks, sometimes as often as every hour. (Tr. 20–21, 48–49, 76–77). The ALJ then considered the medical evidence, and overall found that the evidence of record did not support the severity of impairment alleged prior to September 2015, with discussion of specific relevant evidence. (Tr. 22–27). For example, the ALJ considered Plaintiff's allegation that she stopped working in 2009 in part because her employer was monitoring her frequent bathroom use, but noted that contemporaneous treatment notes mention frequent trips to the restroom, but not a particular frequency, and also reflect Plaintiff's concerns about potential layoffs at work. (Tr. 23, 294, 297). The ALJ noted, however, that the issue was whether such frequency existed as of Plaintiff's date last insured, and the ALJ found that the evidence did not support this. (Tr. 23). The ALJ noted that even treatment records from 2018 did not show complaints of such frequent bathroom use. (Tr. 23, 1160–78). Rather, the ALJ found that the 2009–2012 record generally reflected treatment for a variety of different and overall short-lived

12

complaints, including colitis. (Tr. 23, 294–308, 864–93). The ALJ then considered the gastrointestinal complaints from 2009–2014 in more detail, as discussed above. (Tr. 24–25). After considering the treatment records, the ALJ also considered Plaintiff's daily activities. (Tr. 27). As the ALJ noted, even after Plaintiff stopped working, she attended school to learn massage therapy and testified that she watches her granddaughter every day. (Tr. 27, 62, 302). Thus, the ALJ did not consider these activities as proof that Plaintiff could work, but as one nondispositive factor in his evaluation. (Tr. 27).

Plaintiff asserts that the ALJ did not explain why there were no limitations to account for bowel incontinence and alleged need for frequent bathroom breaks. However, the ALJ specifically addressed this, but found no corroborating evidence to support that such incontinence existed prior to the date last insured. (Tr. 23). Plaintiff also contends the ALJ of put too much weight on Plaintiff's "lifestyle" choices such as drinking relatively large quantities of soda. Plaintiff suggests that the ALJ was judging her character, not the medical evidence. However, this contention is not supported by the record. Rather, the medical evidence indicates that the treating doctors considered at least some episodes of abdominal pain as related to Plaintiff's diet choices. For example, the medical records note that Plaintiff had recently eaten a different diet than normal, including three pieces of pie plus a lot of other fatty foods (Tr. 833), ate cheese, which was a common trigger for her (Tr. 847), was drinking a liter of soda a day (Tr. 868), or had 20–40 ounces of caffeine a day. (Tr. 1012). Plaintiff was advised to decrease her caffeine intake, eat an appropriate balanced diet, and exercise. (Tr. 763, 765). It was therefore entirely appropriate for the ALJ to consider and inquire about dietary issues that may have triggered Plaintiff's symptoms and there is no evidence that this was used to judge Plaintiff's character.

13

As recently reaffirmed by the Seventh Circuit, "So long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn his credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (quoting *Curvin*, 778 F.3d at 651)." Patently wrong is a "high threshold" and it applies "'only when the ALJ's determination lacks any explanation or support.'" *Ray v. Saul*, No. 20-2801, — F. App'x —, 2012 WL 2710377, at *4 (quoting *Elder*, 529 F.3d 408 at 413–14). Here, the ALJ gave a reasonable explanation and support for not fully accepting Plaintiff's allegations of her symptoms and limitations and, thus, there is no basis for remand on this issue.

Next, Plaintiff contends that the RFC assessment did not include all the limitations Plaintiff believes should have been included. As discussed above, however, the ALJ considered the relevant evidence and reasonably concluded that some limitations were supported by the evidence, but that certain alleged limitations, for example, a need for frequent bathroom breaks or inability to stand or walk due to back and foot pain, were either not based on impairments that were established by medical evidence during the relevant period prior to Plaintiff's date last insured or were not as severe as alleged as of Plaintiff's date last insured. This Court finds that the ALJ's RFC assessment is supported by substantial evidence and the ALJ properly relied on the vocational expert's testimony in response to hypothetical questions that incorporated the RFC limitations (Tr. 28–29, 88–90).

Accordingly, the decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.


Entered: December 28, 2021.

                                                 <u>s/ William C. Lee</u>
                                                 William C. Lee, Judge
                                                 United States District Court